UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES G. REECE,

Plaintiff,

v.

D.K. SISTO, et al.,

Defendants.

No. 2:10-cv-0203-JAM-EFB P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants move to dismiss for failure to state a claim and to declare plaintiff a vexatious litigant. ECF No. 60. For the reasons that follow, it is recommended that the motion to dismiss be granted in part and denied in part, and that the motion to declare plaintiff vexatious be denied.

**I. Background**

Plaintiff's original complaint and supporting declarations alleged that defendant Sisto, Warden of California State Prison, Solano ("CSP-Solano"), and defendant Mimis, the CSP-Solano Plant Operations Manager, denied him heat during the winter months. ECF No. 1 at 4.[1] Plaintiff claims that defendants knew they were denying him heat because it was the prison's policy to heat only one side of each housing unit during the winter. *Id.* at 8. According to plaintiff, the policy was based on the belief that if both sides of the housing units were heated, it would "become too stuffy." *Id.* at 13, 18.

[1] This and subsequent page number citations to plaintiff's filings are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by plaintiff.

Although plaintiff claimed to have been "tortured" by the lack of heat in his housing unit, he also alleged that he had access to the dayroom, where the temperatures ranged from 68 to 72 degrees. *Id.* at 12, 20. Plaintiff also alleged that for a two week period in December of 2009, there was an attempt to provide his housing unit with heat, and that the temperatures in his dorm ranged from 48 to 50 degrees. *Id.* at 13, 19, 21. The winters were allegedly so cold that plaintiff was "forced to wear two pairs of socks, one set of thermal underwear, one sweat shirt and one sweat pants, one T shirt, one pair of . . . boxer short, [and] two pairs of home made gloves." *Id.* at 12. In addition, plaintiff complained that he was forced to sleep "under three wool blankets[,] two cotton blanket[s] plus one sheet." *Id.* Plaintiff claimed that his conditions of confinement amounted to cruel and unusual punishment in violation of the Eighth Amendment. He also claimed that the conditions violated his Fourteenth Amendment right to equal protection.

Defendants moved to dismiss plaintiff's Eighth Amendment claim pursuant to Rule 12(b)(6). ECF No. 22. In his opposition brief, plaintiff explained that it was the "A" side dayroom that ranged from 68-72 degrees, not the "L" side dayroom, where plaintiff was housed. ECF No. 24 at 11. He also explained that he had no access to the dayroom during the evenings and overnight, when temperatures were at their lowest. *Id.* at 12. Plaintiff also clarified that he rarely had access to the extra clothing and blankets referenced in the original complaint. *Id* at 10. Focusing solely on what plaintiff had actually alleged in his complaint (as opposed to his opposition) the court granted defendants' motion. *See* ECF No. 47 at 7 ("While plaintiff has made his point, he would like his cell warmer, the allegations in his declaration attached to the complaint undermine the characterization in his opposition brief of freezing temperatures and only one blanket."). The court found that the allegations regarding dorm temperatures ranging from 48 to 54 degrees, access to several layers of clothes and bedding, as well as access to the dayroom where the temperatures were kept comfortable, were not sufficient to state an Eighth Amendment claim. The court dismissed the claim with leave to amend. ECF Nos. 47, 49.

This action now proceeds on plaintiff's second amended complaint, which again asserts an Eighth Amendment claim and a Fourteenth Amendment claim against defendants. ECF No. 53.

/////

In the second amended complaint, plaintiff clarifies his allegations regarding the temperatures in his housing unit, his access to the dayroom, and his access to bedding and clothing. He alleges as follows:

For six consecutive winters, defendants intentionally discriminated against plaintiff through their policy of heating only one side of plaintiff's housing unit. The "A" side of the building was heated, but plaintiff's side, known as the "L" side, was not. The temperature in the "L" side dorms tended to be in in the low 40s. ECF No. 53 at 9 (¶ 15), 13 (¶ 34). But if the outside temperatures dropped to the 40s, the dorm temperatures would drop to the 30s, and sometimes to even 18 degrees cooler than outside. *Id.* at 12 (¶¶ 29, 31). On many evenings, when the outside temperatures dipped into the low 30s, the temperatures on plaintiff's side of the building dipped into the low 20s. *Id.* at 21. It was another five to seven degrees colder in the area around plaintiff's bed because of its proximity to two exterior walls. *Id.* at 12 (¶ 29), 21. On rainy days, condensation accumulated on those walls, eventually rolling down and coating the dormitory floor with water. *Id.* at 22-23. During the daytime (assuming there was no lockdown), plaintiff could access the "L" side dayroom, where the temperature was around 58-60 degrees. *Id.* at 13, 27, 34. But from 9 PM to 5:30 AM, prisoners were not allowed to leave their dorms for any reason other than to use the bathroom. *Id.* at 14 (¶ 37).

The only heat ever directly provided to plaintiff's dorm was from December 8, 2009 to February 2010. *Id.* at 10 (¶ 18), 13 (¶ 32), 24. However, the heating system did not function well, was on its lowest setting, and only ran for a few hours at night, from 8 PM to 2 AM. *Id.* at 24-25, 27, 33, 35. At best, the heating system caused the dorms to warm up to 60 degrees by 11 PM, but by 3 AM, the temperatures would drop again. *Id.* at 27, 29.

In addition to depriving plaintiff of adequate heat, defendants also failed to supply plaintiff with proper winter clothing and blankets. *Id.* at 21, 36. Plaintiff had the standard prison-issued clothing, which was thin and more suitable for summer weather. *Id.* at 27-28. He was also issued two sheets and one blanket. *Id.* at 15 (¶ 40), 27-28. If plaintiff was "lucky," he would have an extra blanket and/or personal clothing, but those items were often confiscated by guards, leaving plaintiff with only the standard-issued prison clothing and one blanket. *Id.* at 28-30.

Defendants argue that (1) the allegations in the second amended complaint are contradicted by allegations in the original complaint and thus, fail to state a proper claim for relief under the Eighth and Fourteenth Amendments; and (2) the court should require plaintiff to post security as a vexatious litigant. ECF No. 60-1.

**II. Defendants' Motion to Dismiss**

**A. Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 562-63, 570 (2007) (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would entitle him to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action. *Id.* at 1965. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted). Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). General allegations are presumed to include specific facts necessary to support the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998). Furthermore, the court is not required to accept as

true allegations contradicted by judicially noticed facts. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)). The court may consider matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)). "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Sprewell*, 266 F.3d at 988.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

**B. Plaintiff's Eighth Amendment Claim**

Defendants first argue that because the conditions alleged in the second amended complaint as to his Eighth Amendment claim contradict those alleged in his original complaint and declarations, this amended claim must be dismissed. They argue that in light of these discrepancies, "[p]laintiff cannot truthfully allege that the temperature and conditions in the L-side dorms constituted cruel and unusual punishment." ECF No. 60-1 at 14. In advancing their argument, defendants isolate general allegations in the second amended complaint and argue that they are contradicted by more specific allegations in the original complaint. For example, defendants point to plaintiff's allegation that defendants "intentionally and knowingly [denied plaintiff] and all prisoners on the (L) side of building 20 heat during the cold winter months" and argue that it is contradicted by more specific allegations in the original complaint that show that at least some heat was provided to plaintiff's side of the building. *See* ECF No. 60-1 at 5. The flaw in defendants' argument is that most of the more specific allegations they reference are also re-alleged in the second amended complaint, making them entirely consistent with the original

complaint, not contradictory. Fairly read, the second amended complaint alleges that whatever heat was provided was not sufficient to satisfy the Eighth Amendment. Moreover, the second amended complaint actually clarifies plaintiff's allegations regarding the temperature in his housing unit, his access to the dayroom, and his access to bedding and clothing.

Although there is some variation in plaintiff's allegations (and the declarations of other inmates, included with the original complaint) regarding temperatures, those allegations are construed as estimates, which inevitably vary, as temperatures do. The allegations vary depending upon whether they refer to the temperature during a certain time period, at daytime or nighttime, on average or at an extreme, or inside or outside. If inside, they vary further depending upon whether they refer to the temperature in the "A" side dayroom or the "L" side dayroom, plaintiff's housing unit, and even the exact location within the housing unit, such as plaintiff's bunk. They also vary depending upon whether they refer to the time when some heat was directly provided to plaintiff's housing unit or to the times when no direct heat was provided. Given these variables, any seemingly inconsistent allegations regarding temperatures can be reconciled, and do not necessitate a finding that the allegations in the second amended complaint are untruthful.

The second amended complaint also explains that from 9:00 p.m. to 5:30 a.m., plaintiff could not access the dayroom, and that but for a brief period in the winter of 2009-2010, heat was not directly provided to his housing unit. These allegations are consistent with those in the original complaint. *See* ECF No. 1 at 13, 21 (alleging that heating ducts were not connected to the air vents inside the housing units December 2009, that they only provided heat from 8:00 p.m. to 2:00 a.m., that it took three hours to heat up, and that by 3:30 a.m., the housing unit "became a freezer again." ). The second amended complaint also explains that plaintiff occasionally had access to extra clothing and bedding to stay warm, but was typically limited to the standard-issued prison clothing and one blanket. Again, these allegations are consistent with those in the original complaint. *See id.* at 34 (alleging that the state-issued clothing is "very thin" and that plaintiff is "lucky" when he has access to more than one wool blanket.). The allegations in the second amended complaint clarify, but do not contradict, the allegations in the original complaint

/////

and declarations. For these reasons, defendants' motion to dismiss the Eighth Amendment claim because of contradictory allegations must be denied.

Defendants also argue that the Eighth Amendment claim must be dismissed because the court previously ruled that the conditions alleged in the original complaint and its attachments did not amount to the kind of extreme conditions prohibited by the Eighth Amendment. ECF No. 60-1 at 18. This argument simply piggybacks on defendants' first and unsuccessful argument regarding contradictory allegations. As discussed, plaintiff's second amended complaint clarifies but does not contradict statements in the original complaint and declarations regarding the temperature in plaintiff's housing unit, his access to the dayroom, and his access to bedding and clothing. While there were defects in plaintiff's earlier complaint, they have been adequately addressed and clarified in the amended claim which, liberally construed, does not contradict the earlier allegations. Therefore, the court accepts the allegations in the second amended complaint as true. Defendants do not argue that the allegations in the second amended complaint, accepted as true, fail to state a cognizable Eighth Amendment claim.

For these reasons, defendants' motion to dismiss plaintiff's Eighth Amendment claim should be denied.

**C. Plaintiff's Fourteenth Amendment Equal Protection Claim**

Plaintiff repeatedly alleges that defendants were aware of the heat discrepancy between the A-side and L-side of plaintiff's housing unit. *See, e.g.*, ECF No. 53 at 5, 19, 37-42. He also claims that the heating policy stemmed from defendants' "extreme bias against all the prisoners on [plaintiff's] side of the housing unit." *Id*. at 40. Defendants move to dismiss the equal protection claim, arguing in part, that plaintiff has not shown that they intentionally discriminated against him. For the reasons stated below, plaintiff fails to state a claim for intentional discrimination under the Equal Protection Clause.

To state a claim for discrimination under the Equal Protection Clause, plaintiff must allege that defendants "acted with an intent or purpose to discriminate against [ ] plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

/////

If plaintiff is not a member of a protected class, he may assert an equal protection claim as a "class of one" by alleging that defendants intentionally treated him differently than other similarly situated people and without a rational basis for doing so. *See Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011); s*ee also Engquist v. Or. Dep't of Agric*., 553 U.S. 591, 601 (2008) (noting that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one'"); *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (confirming that the purpose of the equal protection clause, including "class of one" claims, is to protect against "intentional and arbitrary discrimination"). Discriminatory intent for equal protection purposes "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker … selected . . . a particular course of action . . . because of . . . its adverse effects upon an identifiable group." *Id.* at 687.

Here, plaintiff's allegations in the amended complaint do conflict with his earlier factual assertions. His conclusory allegation of "bias" is not consistent with his prior sworn statement that the heating policy was meant to prevent the building from becoming "too stuffy." ECF No. 1 at 13; *see also* Pl.'s Opp'n ("ECF No. 61") at 38. Moreover, plaintiff asserts that this "heating problem" is widespread across California's prisons. *See* ECF No. 1 at 18, 41-42; ECF No. 53 at 13 (¶ 34) (alleging he has been subjected to this policy at numerous prisons over the years, including Folsom, Mule Creek, Ironwood, Soledad, Corcoran, Solano, Tehachapi, and San Quentin); *see also* ECF No. 61 at 35 ("the problem of not heating both sides of a housing unit has happened to the Plaintiff in every prison he has been housed in going back to 1985 continuing until today."). These allegations suggest that the policy of only heating one side of a housing unit is motivated by and based on problems regarding building design and heating system functionality common to the State's prisons, and not on purposeful discrimination against plaintiff or a specific class-based group of inmates. Thus, plaintiff's bald assertion that defendants were motivated by their "extreme bias" against plaintiff and the inmates on his side of the housing unit fails to state a claim. *See Walker v. Woodford*, 454 F. Supp. 2d 1007, 1017 (S.D. Cal. 2006) (dismissing equal protection claim where there was "no allegation that prisoners themselves were

the objects of discriminatory intent," instead, the allegations demonstrated that the prison's lighting policy "was directed at a particular group of cells"). At most, plaintiff alleges that defendants were aware that the practice of only heating one side of a housing unit left the group of inmates on the other side of the housing unit cold. But defendants' awareness in this regard is not sufficient to demonstrate discriminatory intent for purposes of an equal protection claim. *See Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (plaintiff must allege that the particular course of action was "because of" its adverse effects upon an identifiable group). For these reasons, plaintiff's equal protection claim should be dismissed without further leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely.").

**III. Defendants' Motion to Declare Plaintiff Vexatious**

Defendants ask the court to declare plaintiff a vexatious litigant and require him to post a $20,000 security before proceeding further in this action. ECF No. 60-3.

Under Eastern District of California Local Rule 151(b),

> the Court may at any time order a party to give a security, bond, or undertaking in such amount as the Court may determine to be appropriate. The provisions of Title 3A, part 2, of the California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a procedural Rule of this Court on the basis of which the Court may order the giving of a security, bond, or undertaking, although the power of the Court shall not be limited thereby.

California Code of Civil Procedure, part 2, Title 3A is entitled "Vexatious Litigants" and includes the following provision:

> In any litigation pending . . ., at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security . . .. The motion for an order requiring the plaintiff to furnish security shall be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he or she will prevail in the litigation against the moving defendant.

Cal. Civ. Proc. Code § 391.1. As is relevant to this motion, California law defines a vexatious litigant as a person who, in the seven years immediately preceding the motion, has commenced, prosecuted, or maintained *in propria persona* at least five litigations other than in a small claims

court that have been finally determined adversely to the person. *Id.* § 391(b)(1). To order the posting of a security under § 391.1, the court must additionally conclude, after hearing evidence, "that there is no reasonable probability that the plaintiff will prevail in the litigation against the moving defendant." *Id.* § 391.3(a). Thus, to issue the order requested by defendants, this court must find that: (1) plaintiff has filed five litigations in the past seven years that have been finally determined adversely to plaintiff and (2) there is no reasonable probability that plaintiff will succeed on his claims against defendant.

Defendants have identified nine cases filed by plaintiff in the past seven years, which they argue have been finally determined adversely to plaintiff and thus make him a vexatious litigant under California law. Defendants also introduce the declaration of the prison's stationary engineer to establish that there is not a reasonable probability that plaintiff will prevail in this action. In his sworn opposition brief, plaintiff repeatedly states that defendants did not serve him with any copies of declarations (even though service of the same is reflected in defendants' certificate of service). *See* ECF No. 61 at 1, 6, 31; ECF No. 60-5. Defendants did not file a reply or otherwise respond to plaintiff's assertion. The court cannot resolve defendants' motion on this record. Plaintiff must be afforded the opportunity to review defendants' evidence and to submit his own evidence in opposition. The court is cognizant of the fact that resolution of the motion in defendants' favor could ultimately end plaintiff's case given his in forma pauperis status. Therefore, in an abundance of caution, defendants' motion to declare plaintiff vexatious should be denied without prejudice.

**IV. Recommendation**

Accordingly, it is hereby RECOMMENDED that defendants' motion to dismiss and to declare plaintiff a vexatious litigant (ECF No. 60) be granted in part and denied in part, as follows:

1. Defendants' motion to dismiss be denied as to plaintiff's Eighth Amendment claim;
2. Defendants' motion to dismiss be granted as to plaintiff's Fourteenth Amendment claim; and

/////

3. Defendants' motion that plaintiff be deemed a vexatious litigant and be required to post a security be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 29, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE